IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

| | |
|---|---|
| University Physician Group, | Case No. 18-55138-MAR |
| | Chapter 11 |
| Debtor. | Hon. Mark A. Randon |
| _____/ | |

## AFFIDAVIT IN SUPPORT OF FIRST DAY AND OTHER MOTIONS

Dr. Charles J. Shanley, M.D., after first being duly sworn, states as follows:

1. I am the Chief Executive Officer of University Physician Group, the above-captioned debtor (hereafter "UPG" or the "Debtor").

2. I have been associated with UPG since March 1, 2018, and am familiar with UPG's day-to-day operations, business affairs, books and records.

3. On the date hereof (the "Petition Date"), UPG filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). UPG intends to continue in possession of its property and the management of its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. In order to enable the Debtor to operate effectively, and to avoid any adverse effects that might result from the Chapter 11 filing, the Company has requested various types of relief in "first-day"

applications and motions filed with the Court, as well as other Motions which, although not "First Day" are urgent.

4. I submit this affidavit (the "Affidavit") in support of the motions filed in the above-captioned Chapter 11 case. Any capitalized term not expressly defined herein shall have the meaning ascribed to that term in the relevant first-day motion or application. Except as otherwise indicated, all facts set forth in this Affidavit are based upon my personal knowledge, my review of relevant documents, or my opinion, based upon my experience and knowledge of the Company's operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein being truthful and accurate to the best of my knowledge, information and belief. I am authorized to submit this Affidavit.

5. This Affidavit describes UPG's business, the circumstances surrounding the filing of the Company's Chapter 11 petition, the relevant facts in support of UPG's various first-day applications, motions and papers, which were filed concurrently herewith, and the Company's objectives in this bankruptcy case.

## Background

6. On the Petition Date, UPG filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. UPG is operating its business and managing

its property as a debtor-in-possession pursuant to sections 1107(a) and 1008 of the Bankruptcy Code.

7.  UPG is a Michigan Domestic Nonprofit Corporation, with its main offices in Troy, Michigan; its main clinics in Midtown Detroit, Michigan and various satellite clinics located in and around the Detroit suburban area.

8.  As of the Petition Date, UPG employed eight hundred and seventy-three (873) hourly and salaried workers.

9.  UPG was formed on April 15, 1999. It is a nonprofit multi-specialty physician practice group, providing primary and specialty care. The organization's stated mission and purpose include:

- To furnish medical care and related services in an academic health care setting through employed physicians many of whom hold faculty appointments at the Wayne State University School of Medicine.

- To engage in scientific research in the fields of medicine and public health and in related disciplines.

- To coordinate and render professional and administrative services to hospitals and other health care institutes and their patients by physicians, including those who may be employed by UPG.

- To sponsor and conduct activities supporting academic and educational programs including those designed (i) to provide patients needed to carry out graduate and undergraduate medical education programs; (ii) to further medical research; and (iv) to provide members of the public with continuing access to advanced health care services.

- To establish and conduct regulatory compliance programs covering all of UPG, including all participating departments and business units, applicable to health care services furnished to the UPG's patients.

- To engage in other charitable, educational and scientific activities within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986 or comparable provisions of subsequent legislation (the "Code").

- To acquire, own, dispose of and deal with real and personal property and interests therein and to apply gifts, grants, bequests and devises and the proceeds thereof in furtherance of the purposes of the Organization.

- To do such things and to perform such acts to accomplish its purposes as the Board of Directors may determine to be appropriate and as are not forbidden by Section 501(c)(3) of the Code, with all the powers conferred on nonprofit corporations under the laws of the state of Michigan.

10. In connection with its mission, UPG maintains affiliations with medical providers throughout the Metro Detroit area, including:

- Barbara Ann Karmanos Cancer Institute
- Beaumont Hospitals
- Crittenton Hospital Medical Center
- Detroit Medical Center
- Henry Ford Health System
- Oakwood Healthcare, Inc.
- St. John Providence Health System
- St. Joseph Mercy Oakland

11. UPG has determined that its clinical operations are no longer sustainable in the absence of long term external subsidy. Structural factors include a greater than 50% decline in the number of physicians over the past decade resulting

in a corresponding reduction in clinical revenue. Underperformance further accelerated in recent years secondary to declines in operational and revenue cycle performance coupled with an aging IT platform have hampered preparation for value-based payment reforms.

12. Perhaps most importantly, during a decade of steadily declining clinical revenue, UPG maintained an expansive and underutilized long term leasehold portfolio distributed throughout metropolitan Detroit to support the missions of several of the smaller clinical departments in the context of a deteriorating relationship with one of UPG's affiliated hospitals. This expansive leasehold portfolio was not sustained by a corresponding growth in clinical volumes or revenue. Occupancy and overhead expenses required to maintain these underperforming assets became a pernicious tax on the organization that is no longer sustainable at current volumes.

13. Through these proceedings, UPG intends to use the Chapter 11 process to support clinical operations on the Detroit Medical Center (DMC) central campus and ultimately suspend operations at all suburban sites. Corporate administration functions will relocate to Midtown. Through confirmation of a Chapter 11 Plan, UPG intends to become the premier academic clinical practice on the Detroit Medical Center (DMC) central campus serving the Detroit community and Wayne State University School of Medicine.

14. UPG has commenced this case to facilitate its orderly restructuring and believes its current efforts will maximize recovery to all creditors and other parties in interest.

15. Several immediate factors are imperative to the success of the Chapter 11 proceedings. First, and with regard to several of the Debtor's prepetition leases and contracts, it is imperative that leases previously vacated by UPG and not occupied by any persons or property of UPG, be rejected immediately, so as to avoid the estate incurring any administrative rent obligations. These leases are conferring no value or benefit to the estate, and in no way, shape or form constitute reasonable or necessary expenses of the bankruptcy estate. In point of fact, several of the leases and contracts for which UPG seeks rejection were terminated prior to the commencement of the case, and do not need to be rejected. However, and in an abundance of caution and clarification, UPG is seeking an order rejecting those leases.

16. It is also imperative that UPG obtain authority to pay the prepetition portion of its employee wages and salaries. UPG Doctors are paid monthly, and were last paid on October 31, 2018. Other employees are paid bi-weekly, and their pay period ended on October 26, 2018. Accordingly, the prepetition portion for each group of employees constitutes only a few days, with the balance of the pay periods falling postpetition.

17. Rumors of a potential bankruptcy filing have put UPG's employees on edge, and there is substantial concern about the retention of employees following the announcement of the filing of this case. UPG has already lost a number of doctors to area hospitals. There is a dire and imminent concern that the failure to pay the employees the entire amount of their salaries, on a timely basis, will jeopardize the operations of UPG because any lapse in payment of salaries, along with the Chapter 11 filing, could be the tipping point for employees to leave their jobs. UPG employs seven hundred and twenty-nine (729) full-time and one hundred and forty-four (144) part-time employees, who are all dedicated and productive. It is absolutely imperative that UPG obtain authority to pay these individuals the full amounts they are owed, on a timely basis, in order to preserve their dedication and productivity.

18. Similarly, it is extraordinarily important that the Debtor be permitted to maintain its current cash management systems, including existing bank accounts and lockboxes. The Debtor's ability to timely pay is obligations, including payroll is premised upon the uninterrupted receipt of funds payable to its lockboxes and accounts. These accounts receive, on average $12 million per month, which is necessary to pay UPG's obligations. As set forth more fully in the Motion seeking authority to preserve the existing accounts and systems, any immediate modification of the accounts, or lockboxes, and any notification to

vendors of the need to change the accounts they send payments to, is likely to cause interruption and delay in payments which could seriously hamper UPG's reorganization efforts.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 7, 2018

_____
Dr. Charles J. Shanley, M.D.

The foregoing instrument was acknowledged before me this 7th day of November by Dr. Charles J. Shanley, M.D.

_____,
NOTARY PUBLIC Francis N. Soave
St. Clair County, Michigan,

Acting in Wayne County

My commission expires on 2/17/20